UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
In the Matter of the Application of    :        15cv5016(DLC)
JEFFREY BALLABON,                      :
                                       :        OPINION & ORDER
                    Petitioner,        :        _____
                                       :
         -v-                           :
                                       :
STRAIGHT PATH IP GROUP, INC. f/k/a     :
INNOVATIVE COMMUNICATIONS             :
TECHNOLOGIES, INC.,                    :
                                       :
                    Respondent.        :
                                       :
-------------------------------------- X

APPEARANCES

For petitioner Jeffrey Ballabon:

Ronald Coleman
ARCHER & GREINER P.C.
44 Wall Street, Suite 1285
New York, NY 10005

For respondent Straight Path IP Group, Inc.:

Casey D. Laffey
Christopher P. Hoffman
Nicole Lapsatis
REED SMITH LLP
599 Lexington Avenue, 22d Floor
New York, NY 10022

Jason Cyrulnik
Edward Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504

DENISE COTE, District Judge:

Jeffrey Ballabon ("Ballabon") has petitioned pursuant to N.Y. CPLR § 7511 to vacate an arbitration award entered against him on February 26, 2015.  The arbitration concerned an employment contract between Ballabon and his former employer, Straight Path IP Group, Inc. ("Straight Path"), which was known at the time as Innovative Communications Technologies, Inc. ("ICTI").  Ballabon challenges the award essentially on the grounds that the arbitrator was partial and reached erroneous conclusions.  Straight Path moves to strike certain arguments and evidence included with Ballabon's reply memorandum.  For the following reasons, Ballabon's petition is denied, and the Award is confirmed.  Straight Path's motion to strike is denied as moot.

**BACKGROUND**

Straight Path is a special-purpose, non-practicing entity created from what was originally a division of IDT Corporation ("IDT"), and was established under the name ITCI on March 14, 2011.  It owns and licenses a portfolio of patents relating to digital communications technology.  As IDT assessed whether to take ITCI public, Ballabon was recruited to become CEO of ITCI and, after approximately two months of negotiation, signed the employment agreement ("Contract") at issue here on May 17, 2011, with an effective date of May 5, 2011.

The Contract provided that Ballabon would serve as CEO of ITCI for a term of four years and that he would be appointed to ITCI's Board of Directors.  In addition to Ballabon's annual base salary, the Contract provides an "equity grant" giving Ballabon stock options permitting him to purchase shares in an amount equal to a percentage of ICTI's capitalization.  The Contract states that the options would vest in monthly installments, that the exercise price per share would be "equal to the fair market value of [his shares] on the date of the grant," and that the price would be determined with reference to a "stock option plan" and "stock option agreement."  Ballabon and ICTI never reached agreement on a stock option plan or stock option agreement, and thus never reached agreement on, inter alia, the duration and expiration of the options and the conditions for and means of exercising the options.

The Contract provides that Ballabon's employment could be terminated for "no cause," "cause," or for "good reason." "Cause" is defined to mean, among other things, "gross negligence" and "willful or continued failure to perform his duties"; if the latter was alleged, the Contract requires that Ballabon be given written notice and 30 days to cure the alleged performance failures.  If Ballabon's employment was terminated with cause or he resigned without good reason, all vested options would be cancelled.

3

If Ballabon's employment was terminated without cause, however, he was entitled to a severance payment equal to half of his salary for the duration of his employment period, and his options would vest in full.  To receive the severance payment, the Contract first requires Ballabon "to execute and deliver . . . a general release in form and substance satisfactory" to Straight Path "no later than five (5) days following" the date of termination.

The Contract contains a broad arbitration provision.  It provides, in pertinent part, that

> [a]ny claim, controversy or dispute between the Executive and the Company . . . arising out of or relating to this Agreement, the Employment of the Executive, the cessation of Employment of the Executive, or any matter relating to the foregoing shall be submitted to and settled by commercial arbitration in a forum of the American Arbitration Association . . . conducted in accordance with the National Rules for the Resolution of Employment Disputes.

It further provides that

> [a]ny arbitration award shall be final and binding upon the Parties, and any court, state or federal, having jurisdiction may enter a judgment on the award. The foregoing requirement to arbitrate claims, controversies, and disputes applies to all claims or demands by the Executive, including . . . federal, state, or local laws or regulations pertaining to the Executive's Employment or the termination of the Executive's Employment.

The Contract is fully integrated and contains a merger clause and a provision barring subsequent oral modification.

The Contract provides that it "shall be governed by, construed and enforced in accordance with the laws of the State of New York, irrespective of any conflict-of-law principle."

On June 20, the Board of Directors of IDT voted unanimously not to make ITCI a public corporation.  Ballabon remained CEO of ITCI as a subsidiary even after this decision was reached.

In August of 2012, Ballabon began receiving negative performance reviews.  On October 26, 2012, Ballabon's employment was terminated by Howard Jonas, CEO of parent company IDT, and Ballabon received an email memorializing that termination.  The Arbitrator determined that this termination was without cause.  After October 26, however, Ballabon received several notices from superiors at IDT regarding supposed performance deficiencies.  The final letter, dated December 11, 2012, purported to formally notify Ballabon that his employment was terminated for cause.

The same day -- December 11, 2012 -- Straight Path commenced an arbitration proceeding (the "Arbitration") pursuant to the Contract's arbitration clause.  It sought a declaration that Ballabon was fired for cause; that Straight Path had not breached the Contract; and that Ballabon was only entitled to the equity that had vested since the Contract took effect, not the full equity Ballabon would receive if he had been fired without cause.  On March 13, Ballabon filed an Answering

Statement and Counterclaim Request which sought millions of dollars in salary, severance pay, and equity in Straight Path Communications, Inc., the current parent company of Straight Path.

The parties agreed upon an arbitrator (the "Arbitrator") and over the course of 23 months engaged in discovery -- including depositions of eight witnesses and over 70,000 pages of document production -- as well as motion practice, including a motion for summary judgment.  Amid this, approximately two years into the Arbitration and two months before the Arbitration hearing, Ballabon replaced his lead counsel for the third time and sought a month-long adjournment of the arbitral proceedings. The Arbitrator denied this request, citing the length of the proceedings to that point.[1]

In October 2014, the parties submitted briefs and, on November 3-7 and 20, took part in a hearing (the "Hearing") before the Arbitrator.  The Hearing included opening and closing arguments as well as testimony from twelve fact and expert witnesses; upon Ballabon's request the parties also engaged in post-Hearing briefing.

On February 26, 2015, the Arbitrator issued a 24-page Award.  The Award concludes that "Ballabon's grievances against

---

[1] Neither party has indicated the specific dates on which these events occurred.

[Straight Path] are many and not without some merit," but explained that unless "grievances and the facts underlying them make out a cognizable contract claim," the Arbitrator could not remedy them in the Award.  The Award denies Straight Path's claim regarding the termination, finding that "the facts proved [Ballabon] right."  Specifically, the Award holds that the October 26 termination notice was intended to be effective; the company's reasons for terminating Ballabon's employment were not as stated; and its post-hoc efforts to justify the termination of Ballabon's employment "could not undo history."  The Arbitrator therefore concluded that the termination of Ballabon's employment had not been "for cause."

Even though the Award finds that Ballabon was not dismissed for cause, the Award denies Ballabon's counterclaims for damages.  First, the Award holds that Ballabon had failed to provide a general release and thus to satisfy the express condition precedent for severance pay provided by Section 7(c) of the Contract.  Second, the Award concludes that Ballabon is not entitled to the monetary value of his stock options for four reasons: Ballabon and Straight Path never reached a definite agreement on the material terms of the stock options, rendering that provision of the Contract unenforceable; because he rejected Straight Path's offer to purchase his stock options at fair market price, Ballabon "forfeited [them] by failing to

exercise them in a timely fashion or take appropriate steps to evidence an intent to do so"; Ballabon failed to prove he had the financial wherewithal to exercise the options even had they been provided to him; and Ballabon would have suffered no damages in any event because the options were worth less than their exercise price at any time he could have exercised them.

On May 27, 2015, Ballabon filed a petition in New York state court, pursuant to Section 7511 of New York's Civil Practice Law and Rules ("CPLR"), to vacate the Award.  The petition included no evidentiary exhibits or memorandum of law in support of its allegations.  It was removed to federal court on June 26.

Straight Path's memorandum in opposition to the petition, filed on August 20, repeatedly observed that Ballabon's petition was "lacking even a single citation to legal authority" and was "devoid of evidentiary support."  At the September 18 initial pretrial conference, after ascertaining that Ballabon intended to file an amended petition, the Court advised Ballabon's counsel to carefully consider the arguments in Straight Path's memorandum in so doing.

Ballabon filed his amended petition on September 25.[2]  The amended petition was not accompanied by any evidentiary exhibits

---

[2] Subsequent references to the "petition" refer to the September 25 amended petition, unless otherwise noted.

or a memorandum of law.  Briefing on the petition was fully submitted on October 16.

On October 23, Straight Path moved to strike several arguments made in and eight exhibits -- seven letters from Ballabon's counsel sent to the Arbitrator before and during the Arbitration and Ballabon's post-Hearing brief -- that were submitted with Ballabon's October 16 reply memorandum.  That motion was fully submitted on November 6.

### DISCUSSION

The Federal Arbitration Act ("FAA") provides the standards that will govern this petition to vacate the Award.[3]  A two-part test determines whether the FAA applies to review of an arbitration award.  First, there must be "federal subject matter jurisdiction, i.e. diversity jurisdiction"; and second, "the contract calling for arbitration [must evidence] a transaction involving interstate commerce."  Barbier v. Shearson Lehman Hutton Inc., 948 F.2d 117, 120 (2d Cir. 1991) (citation omitted).

This case was properly removed on the basis of diversity jurisdiction.  The underlying transaction also involves interstate commerce.  The Contract is an employment agreement between Ballabon, a domiciliary of New York, and Straight Path,

_____

[3] In their submissions, the parties have relied on both Section 7511 of the CPLR and Section 10 of the FAA.

a Delaware corporation with its principal place of business in Virginia.  Straight Path, moreover, exists to hold over twenty domestic and foreign patents.  Both the patent industry and the market for managerial talent to oversee patent holdings are self-evidently matters of interstate commerce.  Accordingly, the FAA governs the appeal of the Award.[4]

Under the FAA, the "role of a district court in reviewing an arbitration award is narrowly limited and arbitration panel determinations are generally accorded great deference."  Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 103 (2d Cir. 2013) (citation omitted).  "A court's review of an arbitration award is severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."  United Bhd. of Carpenters & Joiners of Am. v. Tappan Zee Constructors, LLC, --- F.3d ---, 2015 WL 6143213, at *4 (2d Cir. Oct. 20, 2015) (citation omitted).  "Consequently,

---

[4] While in some circumstances the parties' "agree[ment] to abide by state rules of arbitration" may be strictly enforced as "fully consistent with the goals of the FAA," Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989), this is not such a case.  Far from a specific requirement that Article 75 of the CPLR govern arbitration appeals, the Contract's provision for review is a typical choice-of-law clause stating only that New York law is to govern "the construction and enforcement of the Contract."  In any event, the outcome of this case would be the same under the CPLR's substantively similar grounds for vacatur.

the burden of proof necessary to avoid confirmation of an arbitration award is very high, and a district court will enforce the award as long as there is a barely colorable justification for the outcome reached." Kolel, 729 F.3d at 103-04 (citation omitted).

"A district court must confirm an arbitration award unless the party seeking vacatur establishes any of the limited exceptions listed in § 10(a) of the FAA." Id. at 104. Section 10(a) provides, in pertinent part, that an award may be vacated "where there was evident partiality or corruption in the arbitrators, or either of them"; where "arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy"; and "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a). In addition, in this Circuit, "as [a] judicial gloss on these specific grounds for vacatur of arbitration awards," a court "may set aside an arbitration award if it was rendered in manifest disregard of the law." Schwartz v. Merrill Lynch & Co., 665 F.3d 444, 451 (2d Cir. 2011) (citation omitted).

The petition is a lengthy document that accuses both Straight Path and the Arbitrator of misconduct. Many of these accusations are conclusory and provide no basis for setting aside the Award. At the end of the petition, there is a list of

twelve overlapping grounds that Ballabon contends warrant vacating the Award.  Straight Path's opposition memorandum (the second one it filed in this action) dealt in detail with the various accusations in the petition, and in his reply Ballabon abandoned many of his claims.  As a consequence, this Opinion will address those claims that Ballabon continued to press in his reply of October 16.

Ballabon asserts in his reply that the Award should be vacated on the following five grounds.  He argues that the Arbitrator made three errors in managing the Arbitration:  he improperly applied the doctrine of attorney-client privilege to exclude material evidence, failed to prevent Straight Path's interference with his deposition and cross-examination of a witness, and unfairly permitted Straight Path to present a rebuttal witness at the Hearing.  On the basis of these failings, Ballabon also argues that the Arbitrator was partial. Finally, Ballabon challenges the reasoning and conclusions of the final Award.  None of these grounds justifies vacatur.

I. Evidentiary Rulings

Ballabon argues that the Arbitrator made essentially three evidentiary decisions favoring Straight Path that rendered the arbitration fundamentally unfair.  Arbitrators may be "guilty of misconduct" if they "refus[e] to hear evidence pertinent and material to the controversy."  9 U.S.C. § 10.  But,

"[a]rbitration proceedings require merely an expeditious and summary hearing, with only restricted inquiry into factual issues." Kolel, 729 F.3d at 107 (citation omitted).  In addition, arbitrators are "accorded great deference in their evidentiary determinations, and need not follow all the niceties observed by the federal courts." Id. (citation omitted).  A court's review is "restricted to determining whether the procedure was fundamentally unfair." Id. (citation omitted). "Fundamental fairness" requires that arbitrators provide each party "an adequate opportunity to present its evidence and argument" -- but it does not require arbitrators "to hear all the evidence proffered by a party." Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997) (citation omitted) (emphasis added).

Ballabon principally takes issue with the Arbitrator's rulings on the application of the attorney-client privilege.  In addition, he argues that he was prejudiced by interference with his opportunity to depose and cross-examine Ira Greenstein ("Greenstein"), and by the Arbitrator's decision to permit Straight Path to call Dov Schwell ("Schwell") as a rebuttal witness at the Hearing.  Ballabon's arguments are unavailing.

A. Attorney-Client Privilege

Ballabon complains in his reply memorandum that the Arbitrator erred in excluding documents on the ground that they

13

are privileged communications.[5]  But, Ballabon's reply memorandum
does not describe the documents that were excluded in error
because of the Arbitrator's enforcement of the attorney-client
privilege.  His petition, however, does identify one.[6]

In his petition, Ballabon claims that the Arbitrator
misapplied the rules concerning the attorney-client privilege by
excluding a report regarding the value of ITCI's patent
portfolio.  The report analyzed the likelihood of success from,
among other things, an aggressive litigation campaign to enforce
patent rights.  The report was requested by ITCI, the holder of
the patent portfolio, and authored by a third-party legal
consulting group.  Ballabon argues that the exclusion of the
report interfered with his ability to present expert testimony
because Ballabon's expert relied upon the report in rendering an
opinion on damages.[7]

---

[5] The reply memorandum also refers to the Arbitrator's "over-
exclusion" of a "raft of documentary evidence."  Ballabon did
not submit copies of the excluded documents with his petition
and has not provided an adequate basis to assess this complaint.

[6] The letters Ballabon submitted with his reply memorandum
mention other valuation reports, all prepared by third parties
at the behest of ITCI or IDT.  Ballabon does not refer to these
other valuation reports in his reply memorandum or the petition.

[7] Ballabon's expert apparently had used the report even though
the Arbitrator had already rendered an initial ruling declaring
that the report was privileged.

The issue of privilege was briefed and argued before the Arbitrator.  The Award itself acknowledges the Arbitrator's consideration of Ballabon's arguments, noting that "[v]arious [prehearing] motions were filed, for example addressing privilege issues, and resolved."[8]

The Contract provides that any arbitration was to be "conducted in accordance with the National Rules for the Resolution of Employment Disputes."  Those rules -- since renamed "Employment Arbitration Rules and Mediation Procedures," without change to the operative provision -- provide that "[t]he arbitrator shall be the judge of the relevance and materiality of the evidence offered, and conformity to legal rules of evidence shall not be necessary."  Am. Arbitration Ass'n, Employment Arbitration Rules and Mediation Procedures (Nov. 1, 2009), available at https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004362. Where an arbitrator is "not bound by the particulars of federal law governing the attorney-client privilege," the Court of Appeals for the D.C. Circuit has observed that an arbitrator's misapplication of those rules does not answer the pertinent

---

[8] Ballabon also argues that he was prejudiced by the Arbitrator's failure to "rule in writing" on evidentiary disputes.  Because Ballabon has failed to show prejudice from any evidentiary ruling or that the Arbitrator acted in bad faith, this complaint about the procedures the Arbitrator employed need not be discussed further.

question, which remains whether the exclusion amounted to misconduct.  Howard Univ. v. Metro. Campus Police Officer's Union, 512 F.3d 716, 722 (D.C. Cir. 2008) (applying FAA precedent).

Ballabon appears to rest his misconduct claim, however, on the Arbitrator's failure to apply correctly the standards that govern the attorney-client privilege.  But, even if that inquiry were pertinent, Ballabon has not carried the heavy burden of showing that the Arbitrator acted in manifest disregard of that law in ruling that the valuation report was privileged.  "To vacate an award on the basis of a manifest disregard of the law, the court must find something beyond and different from mere error in the law or failure on the part of the arbitrators to understand or apply the law."  Jock v. Sterling Jewelers Inc., 646 F.3d 113, 121 n.1 (2d Cir. 2011) (citation omitted).  Courts undertake a two-part inquiry: first, "whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable, and, second, whether the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it."  Id. (citation omitted).  Here, Ballabon has not shown that well defined privilege law would have permitted disclosure of the report or that the Arbitrator ignored such law.

B.   Greenstein and Schwell

Ballabon also challenges the Arbitrator's failure to stop or control Straight Path's "interference" with his attempts to depose and examine Greenstein, as well as the Arbitrator's decision to allow Straight Path to offer rebuttal testimony from Schwell.  Neither of these challenges requires vacatur.

Greenstein, a friend of Ballabon, was a former director and President of ITCI.  Greenstein testified at the Hearing, and was deposed before the Hearing.  Although Ballabon complains that Straight Path cut short Ballabon's deposition of Greenstein and made too many objections during Ballabon's examination of Greenstein at the Hearing, Ballabon has not identified any testimony which he sought to elicit from Greenstein at the Hearing but was unable to obtain because of Straight Path's conduct.  There is no basis to find, therefore, that the Hearing was fundamentally unfair to Ballabon in this regard.

Schwell serves as outside legal counsel for Straight Path and was involved in the negotiation of the Contract and consulted in the decision to fire Ballabon.  According to Straight Path, Ballabon's Hearing witnesses quoted Schwell as having made certain statements about these issues to them.  Over the objection of Ballabon, the Arbitrator permitted Straight Path to call Schwell as a rebuttal witness and rejected Balloban's request to depose Schwell in advance of that

testimony.[9]  Ballabon argued that he expected Schwell's testimony to be cumulative.  Ballabon complains that it was misconduct for the Arbitrator to permit Schwell to testify and to deny Ballabon the opportunity to depose him.

"Arbitrators must be given discretion to determine whether additional evidence is necessary or would simply prolong the proceedings."  Tempo Shain, 120 F.3d at 19 (citation omitted). Whether to permit Schwell to testify or allow Ballabon to depose Schwell were discretionary determinations for the Arbitrator, and Ballabon has not shown that either decision was fundamentally unfair to him.

## II. Partiality

Relying principally on these evidentiary rulings, Ballabon argues that the Arbitrator was partial.  Partiality is a ground for vacatur expressly provided in Section 10.  But, "[e]vident partiality may be found only where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration."  Kolel, 729 F.3d at 104 (citation omitted). "[A] party seeking vacatur must prove evident partiality by showing something more than the mere appearance of bias," and petitioners "bear a high burden of demonstrating objective facts

---

[9] Weeks before it sought to call Schwell as a rebuttal witness, Straight Path gave notice that it would be offering rebuttal testimony and two days before offering his testimony identified Schwell as a rebuttal witness.

inconsistent with impartiality." Id. at 104-05 (citation omitted).  Accordingly, "a showing of evident partiality may not be based simply on speculation." Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 72 (2d Cir. 2012) (citation omitted).

Typically, partiality is alleged on the grounds of conduct occurring external to the arbitration itself, such as preexisting relationships between the arbitrator and one party, e.g. Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S., 492 F.3d 132, 137-38 (2d Cir. 2007), or statements and conduct that imply bias, e.g. Kolel, 729 F.3d at 105. "[A]dverse rulings alone rarely evidence partiality." Scandinavian Reinsurance, 668 F.3d at 75.  Absent objective indicators of bias, an arbitrator's "consistent[] reli[ance] on evidence and reach[ing] conclusions favorable" to one party "does not establish evident partiality." Bell Aerospace Co. Div. of Textron v. Local 516, Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW), 500 F.2d 921, 923 (2d Cir. 1974).

Ballabon does not allege any relationship, preexisting or otherwise, between Straight Path and the Arbitrator, and thus the typical indicia of "evident partiality" are absent here. Nor do the rulings on which Ballabon relies here present the rare case in which adverse rulings provide evidence of

partiality.  For the reasons stated above, Ballabon has shown neither that the Arbitrator committed misconduct in his procedural rulings nor that any evidentiary decisions were made in bad faith.

III. The Substance of the Award

Finally, Ballabon challenges the Award's failure to give him adequate compensation despite a finding that his employment was terminated without cause.  Ballabon asserts that the Contract, when read as a whole, does not support the Award.

An Award based on a contract will be vacated "where the arbitrator's award is in manifest disregard of the terms of the parties' relevant agreement." Schwartz, 665 F.3d at 452 (citation omitted).  "[V]acatur for manifest disregard of a commercial contract is appropriate only if the arbitral award contradicts an express and unambiguous term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract." Tappan Zee Constructors, 2015 WL 6143213, at *4 (citation omitted); see also Jock, 646 F.3d at 122.  Thus, an "interpretation of the contract terms . . . will not be overruled simply because [of disagreement] with that interpretation." Schwartz, 665 F.3d at 452 (citation omitted).  "If the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract, the award must stand." Id. (citation omitted).

20

In other words, a court's "task is not to adopt either party's interpretation or to craft [its] own," but "to determine whether the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority."  Tappan Zee Constructors, 2015 WL 6143213, at *5 (citation omitted). Even the fact "that a court is convinced [an arbitrator] committed serious error does not suffice to overturn his decision."  Id. at *4 (citation omitted).

The Arbitrator concluded that the Contract's plain text required Ballabon to execute a release of claims as a condition precedent for receiving a severance payment when employment was terminated without cause, and that this provision operated even in the unusual circumstances surrounding the termination of Ballabon's employment.  Because Ballabon did not execute such a release and chose instead to file counterclaims against Straight Path, the Arbitrator concluded, he had not met the condition precedent.  While it may seem counterintuitive to rely upon Ballabon's failure to execute a release at a time when Straight Path is asserting that it has fired him for cause, the Arbitrator premised his ruling on a strict enforcement of the terms of the Agreement.  Since this determination is arguably derived from the terms of the Agreement, it must stand.

Similarly, Ballabon's argument that the Arbitrator's decision that Ballabon had a contractual duty to execute a

release if he wanted to obtain a severance payment "ignore[d]
legal (and moral) rule[s]" of breach of contract finds no
purchase.  According to Ballabon, Straight Path's breach of the
Agreement excused his own duty to execute a release.  But, as
Ballabon concedes, the Arbitrator fully considered this
argument.  Even assuming, however, that the Arbitrator's ruling
reflected a "misunderstanding with respect to the law" governing
breach of contract, it is not a ground for vacatur.  T.Co
Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339
(2d Cir. 2010) (citation omitted).  Ballabon has not shown that
the Arbitrator's error, if any, constituted "manifest disregard"
of the law.  See Jock, 646 F.3d at 122.

     Finally, the Arbitrator rejected Ballabon's claim for stock
options by relying on the terms of the Agreement and his fact
finding.  Ballabon has not shown that the Arbitrator exceeded
his authority in doing so.  The Award's conclusion that the
stock option agreement was unenforceably indefinite was a
straightforward application of contract law and does not evince
the "egregious impropriety" that would warrant closer scrutiny.
T.Co Metals, 592 F.3d at 339 (citation omitted).  To the extent
Ballabon takes issue with the Arbitrator's factual findings --
that Ballabon forfeited his right to the options; that Ballabon
failed to prove he had the resources to exercise the options;
and that the options were worth less than their exercise price

at any time Ballabon could have exercised them -- that challenge also fails. "An arbitrator's factual findings are generally not open to judicial challenge, and [a court] accept[s] the facts as the arbitrator found them." Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 213 (2d Cir. 2002) (citation omitted). After all, "[i]t is the arbitrator's view of the facts . . . that the parties have agreed to accept." Id. at 214 (citation omitted). The Arbitrator's factual determinations here will not be disturbed.

**CONCLUSION**

Ballabon's September 25, 2015 petition to vacate the February 26, 2015 Award is denied. Pursuant to Section 9 of the FAA, which mandates confirmation of an arbitral award upon denial of a motion to vacate or modify, the Award is confirmed. Because the Court finds that the arguments and evidence submitted with Ballabon's reply memorandum do not alter the decision reached here, Straight Path's October 23 motion to strike is denied as moot. The Clerk of Court shall enter judgment for Straight Path and close the case.

SO ORDERED:

Dated:    New York, New York
          November 10, 2015

                    _____
                    DENISE COTE
          United States District Judge

23